# UNITED STATES DISTRICT COURT
## District of Minnesota

UNITED STATES OF AMERICA,

           Plaintiff,

      v.

(1)  SUMALEE INTARATHONG,
     a/k/a Joy,
     a/k/a Alice Spencer Warren,
     a/k/a Alisa Spencer Warren,
     a/k/a Emily Spencer Warren,
     a/k/a Emily Alice Spencer Warren,
     a/k/a Alisa Spencer,
     a/k/a Sumalee Noibumrung,
     a/k/a P'Dew,
     a/k/a Ms. Tew,
     a/k/a P'M,
     a/k/a M,
(2)  CHABAPRAI BOONLUEA,
     a/k/a Lily,
     a/k/a Ploy,
     a/k/a Linda,
(3)  NOPPAWAN LERSLURCHACHAI,
     a/k/a Gangsmoo,
(4)  WATCHARIN LUAMSEEJUN,
     a/k/a Paris,
     a/k/a Moo,
(5)  PANTILLA RODPHOLKA,
     a/k/a Sukanda Kittikunadul,
     a/k/a Noon,
(6)  KHANONG INTHARATHONG,
     a/k/a Nancy,
(7)  SOYSUDA SIANGDANG,
(8)  ANDREW FLANIGAN,
(9)  TODD VASSEY,
(10) THI VU,
(11) JOHN ZBARACKI,
(12) JOHN NG,
(13) PATCHARAPORN SAENGKHAM,

**INDICTMENT** CR 16-257 DWF/TNL

18 U.S.C. § 2
18 U.S.C. § 371
18 U.S.C. § 981
18 U.S.C. § 982
18 U.S.C. § 1546
18 U.S.C. § 1589
18 U.S.C. § 1591
18 U.S.C. § 1594
18 U.S.C. § 1952
18 U.S.C. § 1956
18 U.S.C. § 2421
18 U.S.C. § 2428
21 U.S.C. § 853
28 U.S.C. § 2461

SCANNED
SEP 2 7 2016
U.S. DISTRICT COURT MPLS

United States v. Sumalee Intarathong, *et al.*

        a/k/a Julie,
        a/k/a Fah,
(14) CHANANCHIDA SENASU,
        a/k/a Princess,
        a/k/a Sasha,
(15) YADAPORN PANNGOEN,
        a/k/a Ying,
        a/k/a Pam,
(16) SUPAPON SONPRASIT,
        a/k/a Ivy,
        a/k/a Supapon Maki, and
(17) CHONTHICHA SOICHAISONG,
        a/k/a Anna,

        Defendants.

THE UNITED STATES GRAND JURY CHARGES THAT:

## OVERVIEW OF THE SEX TRAFFICKING ORGANIZATION

1.     The defendants, along with others known and unknown to the grand jury, are members of a large-scale international sex trafficking organization. Through the use of bondage debt and other means of force, fraud, and coercion, the organization traffics women from Thailand to cities across the United States, where the women are forced to engage in countless commercial sex acts for the financial benefit of the criminal enterprise. The women do not have freedom of movement and, until they pay off their bondage debt, are effectively modern day sex slaves.

2.     Since at least 2009 and continuing until the present, the sex trafficking enterprise has trafficked hundreds of Thai women from Bangkok, Thailand, to various cities across the United States, including Los Angeles, Minneapolis, Chicago, Atlanta, Phoenix, Washington, D.C., Las Vegas, Houston, Dallas, and Austin. The women, called "flowers" by the organization, are often from impoverished backgrounds and speak little

United States v. Sumalee Intarathong, *et al.*

English.  Members of the criminal organization recruit these victims from Thailand with promises of a better life in the United States.  The organization engages in widespread visa fraud in order to transport the victims to the United States.

3.    Once in the United States, the victims are sent to "houses of prostitution" in cities across the country.  There, the victims are forced to work long hours—often all day, every day—having sex with strangers in order to attempt to pay down their bondage debt. The victims are isolated.  They do not have freedom of movement.  They are only allowed to leave the prostitution houses in the company of "runners" who work for the criminal organization.  The victims do not have the ability to choose who they have sex with, what sex transactions they will engage in, or when they will have sex.  Until they pay off their exorbitant bondage debt—often between $40,000 and $60,000—the victims are "owned" by the organization.

## DEFENDANTS AND THEIR ROLES

4.    At all times relevant to this Indictment, the defendants and other members of the criminal conspiracy, both known and unknown to the grand jury, worked together to coordinate the movement of Thai women across the Pacific Ocean and throughout the United States to engage in commercial sex acts.  A number of different roles in the criminal organization are held by members of the conspiracy, to include:

a.    Defendant SUMALEE INTARATHONG served as a boss/trafficker. A boss/trafficker is the individual to whom a victim of sex trafficking owes her bondage debt.  A boss/trafficker recruits the victim directly in Thailand to enter into the bondage

3

debt scheme with the trafficker. The boss/trafficker facilitates the travel of the victim to the United States and "owns" the victim until the bondage debt is paid.

      b.    Defendants SUMALEE INTARATHONG, CHABAPRAI BOONLUEA, WATCHARIN LUAMSEEJUN, and PANTILLA RODPHOLKA acted as "house bosses" in the respective cities of Minneapolis, Atlanta, Phoenix, and Chicago. A house boss "owns" one or more of the houses of prostitution, which can in fact be apartments, hotels, houses, and massage parlors. The organization uses these locations throughout the United States to conduct its sex trafficking operation. The house boss runs the day-to-day operations at these locations, including advertising the trafficking victims for commercial sex acts (or "dates"), procuring and maintaining the houses of prostitution, scheduling sex buyers (or "Johns"), and ensuring that a portion of the cash made by the victims is routed back to the boss/trafficker to pay down the bondage debt. House bosses coordinate with traffickers and with one another to facilitate the travel of victims across the United States. In return for their services, the house bosses take a significant portion of the cash the victims receive from the commercial sex acts. A boss/trafficker may also act as a house boss in order to maximize their profit, as in the case of SUMALEE INTARATHONG.

      c.    Defendants NOPPAWAN LERSLURCHACHAI, KHANONG INTHARATHONG, SOYSUDA SIANGDANG, and ANDREW FLANIGAN served as "facilitators" for the organization, assisting in the commercial sex and money laundering activities of the organization. Specifically, NOPPAWAN LERSLURCHACHAI laundered money for the organization and directed the movement of victims across the

United States, including by booking travel for the victims.   Defendants KHANONG

INTHARATHONG, SOYSUDA SIANGDANG, and ANDREW FLANIGAN facilitated

the sex trafficking by advertising the victims for commercial sex, arranging for the travel

of victims across the United States, and laundering the illicit proceeds for the organization.

      d.    Defendants THI VU, TODD VASSEY, JOHN ZBARACKI, and

JOHN NG acted as "runners" for the organization.   The victims trafficked by this

organization are not allowed to leave the prostitution houses unaccompanied, for fear that

they might run away from the trafficking organization.   Accordingly, the house bosses

employ runners to, among other things, escort the victims to and from the airport, on trips

for personal items, and to the bank to deposit money to pay back their bondage debt.

Runners may also be asked to rent hotel rooms, apartments, or other facilities for the

organization.   Runners are typically men and may be paid, in part, in sex with the victims.

      e.    Defendants PATCHARAPORN SAENGKHAM, CHANANCHIDA

SENASU, YADAPORN PANNGOEN, SUPAPON SONPRASIT, and CHONTHICHA

SOICHAISONG are members of the criminal conspiracy who began as victims, but then

rose within the organization to themselves facilitate the trafficking of other women and the

ongoing operations of the criminal organization.

**COUNT 1**
Conspiracy To Commit Sex Trafficking
18 U.S.C. § 1594

**THE CONSPIRACY**

    5.    The allegations contained in paragraphs 1 through 4 of this Indictment are

re-alleged as if stated in full herein.

5

United States v. Sumalee Intarathong, *et al.*

6.    From on or about January 2009 through on or about September 2016, in the State and District of Minnesota and elsewhere, the defendants,

**SUMALEE INTARATHONG,**
**a/k/a Joy,**
**a/k/a Alice Spencer Warren,**
**a/k/a Alisa Spencer Warren,**
**a/k/a Emily Spencer Warren,**
**a/k/a Emily Alice Spencer Warren,**
**a/k/a Alisa Spencer,**
**a/k/a Sumalee Noibumrung,**
**a/k/a P'Dew,**
**a/k/a Ms. Tew,**
**a/k/a P'M,**
**a/k/a M,**
**CHABAPRAI BOONLUEA,**
**a/k/a Lily,**
**a/k/a Ploy,**
**a/k/a Linda,**
**NOPPAWAN LERSLURCHACHAI,**
**a/k/a Gangsmoo,**
**WATCHARIN LUAMSEEJUN,**
**a/k/a Paris,**
**a/k/a Moo,**
**PANTILLA RODPHOLKA,**
**a/k/a Sukanda Kittikunadul,**
**a/k/a Noon,**
**KHANONG INTHARATHONG,**
**a/k/a Nancy,**
**SOYSUDA SIANGDANG,**
**ANDREW FLANIGAN,**
**TODD VASSEY,**
**THI VU,**
**JOHN ZBARACKI, and**
**JOHN NG,**

did, in and affecting interstate and foreign commerce, knowingly conspire with one another and others, known and unknown to the grand jury, to recruit, entice, harbor, transport, provide, obtain, and maintain, by any means, a person, and benefitted, financially and by

receiving anything of value, from participation in a venture which engaged in the previously described acts, and knowing that means of force, threats of force, fraud, coercion, and any combination of such means would be used to cause the person to engage in a commercial sex act, in violation of Title 18, United States Code, Sections 1591(a), 1591(b)(1), and 1594(a).

## THE PURPOSE OF THE CONSPIRACY

7.      The purpose of the conspiracy was for the sex trafficking organization to make money by arranging for Thai women to travel to the United States and, at various houses of prostitution in cities throughout the United States, engage in innumerable commercial sex acts.

## THE MANNER AND MEANS OF THE CONSPIRACY

8.      To achieve the purpose of the conspiracy, the defendants recruited victims from Thailand, entered into bondage debt "contracts" with the victims, facilitated the travel of the victims from Thailand to the United States by engaging in widespread visa fraud, advertised the victims for commercial sex in the United States, arranged and facilitated such transactions, isolated and moved the women between various houses of prostitution in the State and District of Minnesota and elsewhere, and laundered the illicit proceeds in the State and District of Minnesota and elsewhere. In particular, the defendants, together with others known and unknown to the grand jury, committed the following acts.

### The Recruitment in Thailand

9.      Members of the conspiracy recruit women in Thailand, which the organizations calls "flowers," to enter into debt bondage "contracts" with the criminal

organization.  The victims of the sex trafficking scheme are typically Thai women from impoverished backgrounds.  When a victim enters into the debt bondage "contract," the victim generally agrees to incur a significant debt—one which, in her native country, neither the victim nor her family could ever hope to repay—in exchange for a visa and travel to the United States.  The bondage debt amount far exceeds the actual expenses the trafficker incurs to bring the victim to the United States.

10.     Prior to transporting the victims to the United States, the organization will typically arrange to have professional-quality escort-style photographs of the victims in lingerie and in various states of undress taken in Thailand.  These photographs are sent from the traffickers in Thailand to various members of the conspiracy in the United States and are ultimately used to advertise the victims for commercial sex transactions, often on websites such as backpage.com and eros.com.

11.     Traffickers will often encourage the victims to undergo breast augmentation plastic surgery in Thailand in order to make the victims more "appealing" to potential sex buyers in the United States.  The cost of the plastic surgery is added to the victims' already significant bondage debt.

12.     The organization facilitates the international transportation of the victims by engaging in widespread visa fraud.  Members of the organization assist victims in obtaining fraudulent visas and travel documents through the use of false statements.  As a part of obtaining visa documents, members of the criminal conspiracy will gather personal information from the victims, including the location of the victims' families in Thailand.  In the event that a victim becomes non-compliant or escapes the organization in the United

8

United States v. Sumalee Intarathong, *et al.*

States, this information may be used to threaten the victim and/or her family. Traffickers coach the victims as to what to say to law enforcement and customs and border protection officials in the United States in order to avoid detection and ultimately receive a visa.

### The Force, Fraud, and Coercion in the United States

13.    The victims typically enter the United States through Los Angeles, California. The victims are then sent to various houses of prostitution throughout the United States, including to Minnesota, where the victims work to pay down their bondage debt by engaging in numerous commercial sex transactions.

14.    Once in the United States, victims often find they have been brought to the United States under false pretenses. In Thailand, while traffickers tell a victim that she will engage in prostitution activities, the trafficker often paints a rosy picture of life in the United States, with promises that the victim will quickly be able to pay down her debt, support her family in Thailand, and make a better life for herself in the United States. However, once a victim enters the United States, the terms of the "contract" often change dramatically to favor the trafficking organization. For instance, while a victim may make $180 from a commercial sex transaction, only a portion of that money (approximately $100) will go to pay down her bondage debt. The rest of the profits ($80) are paid to the "house boss," and a victim is allowed to keep little to none of the money she makes engaging in commercial sex acts. Additionally, victims are often charged for all manner of things, such as housing, travel, or even food, such that the ability to pay down the bondage debt is further reduced.

15.     While traffickers may portray themselves as kind and sympathetic during the recruitment process in Thailand, once a victim enters the United States, the traffickers often turn controlling, manipulative, threatening, and violent. The traffickers enforce the terms of the bondage debt through means of force, and threats of force, legal process (including alerting immigration officials), and deportation. The traffickers use those means to control a victim and, in instances where a victim has escaped or run away from the organization, compel a victim to continue working or return to work.

16.     For example, in 2010, SUMALEE INTARATHONG recruited Victim 1 in Bangkok, Thailand. Victim 1 agreed to work for the criminal organization under a $40,000 bondage debt. The organization filled out false visa paperwork for Victim 1, created and funded a false bank account for Victim 1, and coached Victim 1 on what to say to immigration officials in order to gain entry to the United States. When Victim 1 entered the United States, she was sent to work at two different houses of prostitution. Victim 1 did not have freedom of movement and was not allowed to leave the prostitution house unless she was accompanied by a "runner," who would guard Victim 1 to make sure that she did not run away. Victim 1 worked six to seven days a week, twelve hours a day, engaging in commercial sex transactions. Victim 1 found that the repayment terms of her bondage debt "contract" significantly changed (to favor the criminal organization) once Victim 1 arrived in the United States. SUMALEE INTARATHONG verbally abused and isolated Victim 1, and ultimately demoted Victim 1 to working in a "spa" in Houston, Texas. The "spa" was open twenty-four hours a day, seven days a week. Victim 1 lived on a mattress on the floor with another victim. Victim 1 was not allowed to leave the "spa."

United States v. Sumalee Intarathong, *et al.*

Whenever a sex buyer would enter the spa—at all times of the day and night—Victim 1 was required to engage in commercial sex with the sex buyer for the benefit of the sex trafficking organization. One night, Victim 1 ran away. Soon after Victim 1 disappeared, she began to receive threatening emails from SUMALEE INTARATHONG, which included a threat that "...If you not contact me in 24 hour I will send someone to your family." Victim 1 understood that to mean that gangsters in Thailand associated with the sex trafficking organization would be sent to harm Victim 1's family in Thailand. SUMALEE INTARATHONG additionally threatened Victim 1 with legal process: "I give you a chance to contact me in 24 hour, But you not take it, I will link your web page from escort website page to US EMBASSY, including your details:  Your name, your date of birth your passport number..ETC and they will cancel your visa, SIMPLE THAT IF YOU NOT BELIEVE YOU CAN TRY THIS LINK."   To this email, SUMALEE INTARATHONG attached a link to an escort advertisement posted by the criminal organization featuring Victim 1.

17.    The criminal organization also controls the victims by isolating them from the outside world. The victims, who often speak little to no English and are illegally present in the United States, live in the houses of prostitution. They do not have control over their movements and are typically only allowed to leave the prostitution houses if they are accompanied by "runners."   The runners are often "clients" of the organization who may be compensated through sex with the victims.  The victims are not allowed to decline commercial sex buyers who might be physically or sexually abusive or otherwise unwanted.  The victims are advertised for commercial sex transactions in any number of

ways, including in online escort ads on websites such as backpage.com and eros.com. The victims are often expected to have sex with numerous men in a given day.

18.     At various times, the organization operated out of at least seven identified houses of prostitution in the Minneapolis area and trafficked more than a dozen victims throughout Minnesota. For example, upon her arrival at the Minneapolis/St. Paul airport, JOHN ZBARACKI met Victim 2 and drove her to Bloomington, Minnesota, to purchase condoms and food. JOHN ZBARACKI then transported Victim 2 to an apartment unit in Bloomington, Minnesota, which was leased by the organization for commercial sex activity. Victim 2 was advertised for commercial sex acts in the Bloomington, Minnesota area on backpage.com. Victim 2 was trafficked by the criminal organization to other cities in the United States, including to Phoenix, Arizona and Bloomington, Indiana.

19.     The organization deals primarily in cash and engages in widespread money laundering in order to promote, receive, and conceal profits from its sex trafficking business. The illegal proceeds from the commercial sex transactions are often deposited in bank accounts in a manner so as to avoid detection, including depositing cash in smaller amounts to evade reporting requirements. Illegal proceeds are often used by sex trafficking organizations to further promote the sex trafficking operation, including through purchases of lodging and travel for the victims.

20.     All in violation of Title 18, United States Code, Section 1594(c).

United States v. Sumalee Intarathong, *et al.*

## COUNT 2
Sex Trafficking by Use of Force, Fraud, and Coercion
18 U.S.C. § 1591

21.     The allegations contained in paragraphs 1 through 20 of this Indictment are

re-alleged as if stated in full herein.

22.     From on or about December 3, 2013 through on or about February 1, 2014,

in the State and District of Minnesota and elsewhere, the defendants,

**SUMALEE INTARATHONG,**
**a/k/a Joy,**
**a/k/a Alice Spencer Warren,**
**a/k/a Alisa Spencer Warren,**
**a/k/a Emily Spencer Warren,**
**a/k/a Emily Alice Spencer Warren,**
**a/k/a Alisa Spencer,**
**a/k/a Sumalee Noibumrung,**
**a/k/a P'Dew,**
**a/k/a Ms. Tew,**
**a/k/a P'M,**
**a/k/a M,**
**CHABAPRAI BOONLUEA,**
**a/k/a Lily,**
**a/k/a Ploy,**
**a/k/a Linda, and**
**NOPPAWAN LERSLURCHACHAI,**
**a/k/a Gangsmoo,**

aiding and abetting one another and others, known and unknown to the grand jury, in and

affecting interstate commerce, knowingly recruited, enticed, harbored, transported,

provided, obtained, and maintained a person, namely, Victim 3, and benefitted, financially

and by receiving something of value, from participation in a venture which engaged in the

previously described acts, and knowing that force, fraud, and coercion would be used to

13

cause Victim 3 to engage in a commercial sex act, and attempted to do so, all in violation

of Title 18, United States Code, Sections 1591(a), 1591(b)(1), 1594(a), and 2.

## COUNT 3
### Conspiracy To Commit Forced Labor
### 18 U.S.C. § 1594

23.    The allegations contained in paragraphs 1 through 22 of this Indictment are

re-alleged as if stated in full herein.

24.    From on or about January 2009 through on or about September 2016, in the

State and District of Minnesota and elsewhere, the defendants,

**SUMALEE INTARATHONG,**
**a/k/a Joy,**
**a/k/a Alice Spencer Warren,**
**a/k/a Alisa Spencer Warren,**
**a/k/a Emily Spencer Warren,**
**a/k/a Emily Alice Spencer Warren,**
**a/k/a Alisa Spencer,**
**a/k/a Sumalee Noibumrung,**
**a/k/a P'Dew,**
**a/k/a Ms. Tew,**
**a/k/a P'M,**
**a/k/a M,**
**CHABAPRAI BOONLUEA,**
**a/k/a Lily,**
**a/k/a Ploy,**
**a/k/a Linda,**
**NOPPAWAN LERSLURCHACHAI,**
**a/k/a Gangsmoo,**
**WATCHARIN LUAMSEEJUN,**
**a/k/a Paris,**
**a/k/a Moo, and**
**PANTILLA RODPHOLKA,**
**a/k/a Sukanda Kittikunadul,**
**a/k/a Noon,**

14

did knowingly provide and obtain and attempt to provide and obtain the labor and services of a person by any one of, and by any combination of, the following means—(a) by means of force, threats of force, physical restraint, and threats of physical restraint to that person or another person; (b) by means of serious harm and threats of serious harm to that person or another person; (c) by means of the abuse and threatened abuse of law or legal process; and (d) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, and did knowingly benefit, and attempt to benefit, financially and by receiving anything of value, from participation in a venture which has engaged in the providing and obtaining of labor and services by any of the means previously described, knowing or in reckless disregard of the fact that the venture has engaged in the providing and obtaining of labor and services by any of such means, and attempted to do so, all in violation of Title 18, United States Code, Sections 1589(a), 1589(b), and 1594(a).

## THE PURPOSE OF THE CONSPIRACY

25.    The purpose of the conspiracy was for the sex trafficking organization to make money by forcing Thai women, whose labor and services was obtained by means of force, fraud, and coercion, including through debt bondage, to engage in innumerable commercial sex acts at various houses of prostitution throughout the United States.

## THE MANNER AND MEANS OF THE CONSPIRACY

26.    To achieve the purpose of the conspiracy, the defendants, together with others known and unknown to the grand jury, committed the acts detailed in Count 1 of

this Indictment, including recruiting women, including but not limited to Victim 1, Victim 2, and Victim 3, from Thailand, requiring them to pay off a bondage debt by engaging in commercial sex acts, advertising the women for commercial sex acts, arranging and facilitating such transactions, isolating and moving the women between various houses of prostitution in the State and District of Minnesota and elsewhere, and laundering the illicit proceeds in the State and District of Minnesota and elsewhere.

27.     All in violation of Title 18, United States Code, Section 1594(b).

## COUNT 4
### Conspiracy To Commit Transportation to Engage in Prostitution
### 18 U.S.C. § 371

28.     The allegations contained in paragraphs 1 through 27 of this Indictment are re-alleged as if stated in full herein.

29.     From on or about January 2009 through on or about September 2016, in the State and District of Minnesota and elsewhere, the defendants,

**SUMALEE INTARATHONG,**
**a/k/a Joy,**
**a/k/a Alice Spencer Warren,**
**a/k/a Alisa Spencer Warren,**
**a/k/a Emily Spencer Warren,**
**a/k/a Emily Alice Spencer Warren,**
**a/k/a Alisa Spencer,**
**a/k/a Sumalee Noibumrung,**
**a/k/a P'Dew,**
**a/k/a Ms. Tew,**
**a/k/a P'M,**
**a/k/a M,**
**CHABAPRAI BOONLUEA,**
**a/k/a Lily,**
**a/k/a Ploy,**
**a/k/a Linda,**
**NOPPAWAN LERSLURCHACHAI,**

16

**a/k/a Gangsmoo,**
**WATCHARIN LUAMSEEJUN,**
**a/k/a Paris,**
**a/k/a Moo,**
**PANTILLA RODPHOLKA,**
**a/k/a Sukanda Kittikunadul,**
**a/k/a Noon,**
**KHANONG INTHARATHONG,**
**a/k/a Nancy,**
**SOYSUDA SIANGDANG,**
**ANDREW FLANIGAN,**
**TODD VASSEY,**
**THI VU,**
**JOHN ZBARACKI, and**
**JOHN NG,**

conspired, with one another and with others known and unknown to the grand jury, to commit an offense against the United States and to defraud the United States, and one or more did an act to effect the object of the conspiracy, that is, knowingly transporting any individual in interstate and foreign commerce with intent that such individual engage in prostitution and in any sexual activity for which any person can be charged with a criminal offense, in violation of Title 18, United States Code, Section 2421.

## THE PURPOSE OF THE CONSPIRACY

30.     The purpose of the conspiracy was for the sex trafficking organization to make money by arranging for Thai women to travel to the United States and, at various houses of prostitution in cities throughout the United States, engage in innumerable commercial sex acts.

## THE MANNER AND MEANS OF THE CONSPIRACY

31.     To achieve the purpose of the conspiracy, the defendants, together with others known and unknown to the grand jury, transported multiple victims, including but

17

United States v. Sumalee Intarathong, *et al.*

not limited to Victim 1, Victim 2, and Victim 3, in interstate and foreign commerce, including in the State and District of Minnesota and elsewhere, with intent that such individuals engage in prostitution and in any sexual activity for which any person can be charged with a criminal offense, and attempted to do so. In particular, the defendants, together with others known and unknown to the grand jury, committed the following acts.

## OVERT ACTS

### Victim 2

32.     On or about January 1, 2014, the sex trafficking organization transported Victim 2 from Phoenix, Arizona to Minneapolis, Minnesota, where Victim 2 was advertised for and engaged in prostitution activities at the direction of and for the benefit of the trafficking organization.

33.     On or about March 10, 2014, the sex trafficking organization transported Victim 2 from Atlanta, Georgia to Minneapolis, Minnesota, where Victim 2 was advertised for and engaged in prostitution activities at the direction of and for the benefit of the trafficking organization.

34.     On or about March 27, 2014, the sex trafficking organization transported Victim 2 from Minneapolis, Minnesota to Orlando, Florida, where Victim 2 was advertised for and engaged in prostitution activities at the direction of and for the benefit of the trafficking organization.

### Victim 3

35.     On or about November 1, 2013, the sex trafficking organization transported Victim 3 from Phoenix, Arizona to Minneapolis, Minnesota, where Victim 3 was

advertised for and engaged in prostitution activities at the direction of and for the benefit of the trafficking organization.

36.   On or about December 16, 2013, the sex trafficking organization transported Victim 3 from Minneapolis, Minnesota to Houston, Texas, where Victim 3 was advertised for and engaged in prostitution activities at the direction of and for the benefit of the trafficking organization.

37.   On or about January 18, 2014, the sex trafficking organization transported Victim 3 from Orlando, Florida to Minneapolis, Minnesota, where Victim 3 was advertised for and engaged in prostitution activities at the direction of and for the benefit of the trafficking organization.

38.   On or about December 2, 2015, the sex trafficking organization transported Victim 3 from Los Angeles, California to Minneapolis, Minnesota, where Victim 3 was advertised for and engaged in prostitution activities at the direction of and for the benefit of the trafficking organization.

39.   All in violation of Title 18, United States Code, Section 371.

## COUNT 5
Transportation To Engage in Prostitution
18 U.S.C. § 2421

40.   The allegations contained in paragraphs 1 through 39 of this Indictment are re-alleged as if stated in full herein.

41.   From on or about December 3, 2013 through on or about March 23, 2014, in the State and District of Minnesota, the defendants,

**SUMALEE INTARATHONG,**

United States v. Sumalee Intarathong, *et al.*

a/k/a Joy,
a/k/a Alice Spencer Warren,
a/k/a Alisa Spencer Warren,
a/k/a Emily Spencer Warren,
a/k/a Emily Alice Spencer Warren,
a/k/a Alisa Spencer,
a/k/a Sumalee Noibumrung,
a/k/a P'Dew,
a/k/a Ms. Tew,
a/k/a P'M,
a/k/a M,
**CHABAPRAI BOONLUEA,**
a/k/a Lily,
a/k/a Ploy,
a/k/a Linda,
**NOPPAWAN LERSLURCHACHAI,**
a/k/a Gangsmoo,
**KHANONG INTHARATHONG,**
a/k/a Nancy,
**TODD VASSEY,** and
**JOHN ZBARACKI,**

aiding and abetting one another and others, known and unknown to the grand jury, did

knowingly transport Victim 2 in interstate and foreign commerce with intent that Victim 2

engage in prostitution and in any sexual activity for which any person can be charged with

a criminal offense, all in violation of Title 18, United States Code, Sections 2421 and 2.

## COUNT 6
Conspiracy To Engage in Money Laundering
18 U.S.C. § 1956

42.    The allegations contained in paragraphs 1 through 41 of this Indictment are

re-alleged as if stated in full herein.

43.    From on or about 2009 through on or about September 2016, in the State and

District of Minnesota, and elsewhere, the defendants,

**SUMALEE INTARATHONG,**

United States v. Sumalee Intarathong, *et al.*

a/k/a Joy,
a/k/a Alice Spencer Warren,
a/k/a Alisa Spencer Warren,
a/k/a Emily Spencer Warren,
a/k/a Emily Alice Spencer Warren,
a/k/a Alisa Spencer,
a/k/a Sumalee Noibumrung,
a/k/a P'Dew,
a/k/a Ms. Tew,
a/k/a P'M,
a/k/a M,
**CHABAPRAI BOONLUEA,**
a/k/a Lily,
a/k/a Ploy,
a/k/a Linda,
**NOPPAWAN LERSLURCHACHAI,**
a/k/a Gangsmoo,
**WATCHARIN LUAMSEEJUN,**
a/k/a Paris,
a/k/a Moo,
**PANTILLA RODPHOLKA,**
a/k/a Sukanda Kittikunadul,
a/k/a Noon,
**KHANONG INTHARATHONG,**
a/k/a Nancy,
**SOYSUDA SIANGDANG,**
**ANDREW FLANIGAN,**
**TODD VASSEY,**
**THI VU,**
**JOHN ZBARACKI,** and
**JOHN NG,**

unlawfully and knowingly combined, conspired, confederated and agreed with one other

and others known and unknown to the grand jury to commit certain offenses under Title

18, United States Code, Sections 1956(a)(1) and (a)(2), that is: (1) with intent to promote

the carrying on of such specified unlawful activity; and (2) with knowledge that the

transactions were designed in whole and in part to conceal and disguise the nature, location,

source, ownership and control of the proceeds of specified unlawful activity, conducting

21

and attempting to conduct financial transactions affecting interstate commerce which in fact involved the proceeds of specified lawful activity, namely, Transportation for Prostitution, in violation of Title 18, United States Code, Section 2421, and Sex Trafficking, in violation of Title 18, United States Code, Section 1591, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and attempted to do so, all in violation of Title 18, United States Code, Section 1956(h).

## COUNT 7
Conspiracy To Use a Communication Facility to Promote Prostitution
18 U.S.C. § 371

44.    The allegations contained in paragraphs 1 through 43 of this Indictment are re-alleged as if stated in full herein.

45.    From on or about January 2009 through on or about September 2016, in the State and District of Minnesota and elsewhere, the defendants,

**SUMALEE INTARATHONG,**
a/k/a Joy,
a/k/a Alice Spencer Warren,
a/k/a Alisa Spencer Warren,
a/k/a Emily Spencer Warren,
a/k/a Emily Alice Spencer Warren,
a/k/a Alisa Spencer,
a/k/a Sumalee Noibumrung,
a/k/a P'Dew,
a/k/a Ms. Tew,
a/k/a P'M,
a/k/a M,
**CHABAPRAI BOONLUEA,**
a/k/a Lily,
a/k/a Ploy,
a/k/a Linda,
**NOPPAWAN LERSLURCHACHAI,**

22

United States v. Sumalee Intarathong, *et al.*

a/k/a **Gangsmoo,**
**WATCHARIN LUAMSEEJUN,**
a/k/a **Paris,**
a/k/a **Moo,**
**PANTILLA RODPHOLKA,**
a/k/a **Sukanda Kittikunadul,**
a/k/a **Noon,**
**KHANONG INTHARATHONG,**
a/k/a **Nancy,**
**SOYSUDA SIANGDANG,**
**ANDREW FLANIGAN,**
**TODD VASSEY,**
**THI VU,**
**JOHN ZBARACKI,** and
**JOHN NG,**

conspired, with one another and with others known and unknown to the grand jury, to commit an offense against the United States and to defraud the United States, and one or more did an act to effect the object of the conspiracy, that is, knowingly using a facility in interstate and foreign commerce, specifically computers and cellular telephones, with intent to promote, manage, establish, and carry on acts to facilitate the promotion, management, establishment, and carrying on an unlawful activity, namely, Transportation for Prostitution, in violation of Title 18, United States Code, Section 2421.

## THE PURPOSE OF THE CONSPIRACY

46.     The purpose of the conspiracy was for the sex trafficking organization to make money by arranging for Thai women to travel to the United States and, at various houses of prostitution in cities throughout the United States, engage in innumerable commercial sex acts.

United States v. Sumalee Intarathong, *et al.*

## THE MANNER AND MEANS OF THE CONSPIRACY

47.     To achieve the purpose of the conspiracy, the defendants, together with others known and unknown to the grand jury, used computers and cellular telephones with intent to promote, manage, establish, and carry on acts to facilitate the promotion, management, establishment, and carrying on the prostitution activities of the victims of the sex trafficking operation, including but not limited to Victim 1, Victim 2, and Victim 3. In particular, the defendants, together with others known and unknown to the grand jury, committed the following acts.

## OVERT ACTS

48.     On or about January 5, 2014, the sex trafficking organization posted an ad on backpage.com that contained escort-style photos of Victim 2 and advertised Victim 2 for commercial sex activities in Bloomington, Minnesota.

49.     On or about December 3, 2013, the sex trafficking organization posted an ad on backpage.com that contained escort-style photos of Victim 3 and advertised Victim 3 for commercial sex activities in Bloomington, Minnesota.

50.     All in violation of Title 18, United States Code, Section 371.

## COUNT 8
Conspiracy to Commit Visa Fraud
18 U.S.C. § 371

51.     The allegations contained in paragraphs 1 through 50 of this Indictment are re-alleged as if stated in full herein.

52.     From on or about January 2009 through on or about September 2016, in the State and District of Minnesota and elsewhere, the defendants,

24

**SUMALEE INTARATHONG,**
a/k/a Joy,
a/k/a Alice Spencer Warren,
a/k/a Alisa Spencer Warren,
a/k/a Emily Spencer Warren,
a/k/a Emily Alice Spencer Warren,
a/k/a Alisa Spencer,
a/k/a Sumalee Noibumrung,
a/k/a P'Dew,
a/k/a Ms. Tew,
a/k/a P'M,
a/k/a M,
**PATCHARAPORN SAENGKHAM,**
a/k/a Julie,
a/k/a Fah,
**CHANANCHIDA SENASU,**
a/k/a Princess,
a/k/a Sasha,
**YADAPORN PANNGOEN,**
a/k/a Ying,
a/k/a Pam,
**SUPAPON SONPRASIT,**
a/k/a Ivy,
a/k/a Supapon Maki, and
**CHONTHICHA SOICHAISONG,**
a/k/a Anna,

conspired, with one another and with others known and unknown to the grand jury, to commit an offense against the United States and to defraud the United States, and one or more did an act to effect the object of the conspiracy, that is, did knowingly utter, use, attempt to use, possess, obtain, accept and receive any visa, permit, border crossing card, alien registration receipt card and other document prescribed by statute or regulation for entry into and as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered and falsely made, and to have been procured by means

of any false claim and statement, and to have been otherwise procured by fraud and unlawfully obtained, in violation of Title 18, United States Code, Section 1546.

## PURPOSE OF THE CONSPIRACY

53.     It was the purpose of the conspiracy for the sex trafficking organization to procure B1/B2 tourist visas for victims to travel to the United States to engage in innumerable commercial sex acts to benefit the sex trafficking organization, knowing that the B1/B2 tourist visas were obtained based, at least in part, on a false claim and statement that the victim/applicant had not engaged in prostitution acts in the past 10 years and was not entering the United States to engage in prostitution acts.

## MANNER AND MEANS

54.     The visa fraud was accomplished through a variety of means, but typically involved the victim applying for a B1/B2 tourist visa and subsequently overstaying the stated length of the "tourism" trip.  The bosses/traffickers handled the visa paperwork, often providing the victim with a completed application to sign.  The application included false statements that the victim had not previously engaged in prostitution activity and was not entering the United States to engage in prostitution acts.

55.     The bosses/traffickers instructed the victims to open bank accounts in Thailand.  These bank accounts were then funded by the trafficking organization so that the victims' visa applications were more likely to be approved.  False address and employment information was also typically included on these visa applications.

56.     The victims were then coached by the bosses/traffickers as to how to respond to immigration questions when they made entry to the United States.  Victims were also

United States v. Sumalee Intarathong, *et al.*

told not to travel with items such as lingerie, as this might attract the attention of law enforcement.

## OVERT ACTS

57.     On or about November 15, 2010, PATCHARAPORN SAENGKHAM received a B1/B2 tourist visa to enter the United States by representing that she was employed in construction and intended to go on vacation to New York City with a friend. PATCHARAPORN SAENGKHAM falsely stated that she was not coming to the United States to engage in prostitution and that she had not engaged in prostitution within the past ten years.   On or about November 16, 2011, a photo of the Thai passport of PATCHARAPORN SAENGKHAM was emailed between members of the criminal conspiracy.   PATCHARAPORN SAENGKHAM entered the United States on or about December 27, 2010.  On or about May 16, 2012, the sex trafficking organization posted an ad on backpage.com that contained escort-style photos of PATCHARAPORN SAENGKHAM and advertised PATCHARAPORN SAENGKHAM for commercial sex activities in Phoenix, Arizona.

58.     On or about August 22, 2012, CHANANCHIDA SENASU received a B1/B2 tourist visa to enter the United States by representing that she was employed in sales of industrial equipment and intended to travel on vacation to Las Vegas and California with siblings and in-laws.  CHANANCHIDA SENASU falsely stated that she was not coming to the United States to engage in prostitution and that she had not engaged in prostitution within the past ten years.  On or about August 24, 2012, a photo of the Thai passport of CHANANCHIDA SENASU was emailed between members of the criminal conspiracy.

27

CHANANCHIDA SENASU entered the United States on or about September 21, 2012. On or about March 1, 2012, escort-style photos of CHANANCHIDA SENASU were emailed between members of the criminal conspiracy. On or about November 19, 2013, the sex trafficking organization posted an ad on backpage.com that contained escort-style photos of CHANANCHIDA SENASU and advertised CHANANCHIDA SENASU for commercial sex activities in Bloomington, Minnesota.

59.     On or about February 1, 2013, YADAPORN PANNGOEN received a B1/B2 tourist visa to enter the United States by representing that she worked in sales and marketing for a timber company and intended to visit relatives on a tourism trip to Washington, D.C. and to New York.  YADAPORN PANNGOEN falsely stated that she was not coming to the United States to engage in prostitution and that she had not engaged in prostitution within the past ten years.  On or about March 8, 2013, a photo of the Thai passport of YADAPORN PANNGOEN was emailed between members of the criminal conspiracy.  YADAPORN PANNGOEN entered the United States on or about March 9, 2013.  On or about January 9, 2014, escort-style photos of YADAPORN PANNGOEN were emailed between members of the criminal conspiracy.  On or about January 9, 2014, the sex trafficking organization posted an ad on backpage.com that contained escort-style photos of YADAPORN PANNGOEN and advertised YADAPORN PANNGOEN for commercial sex activities in Bloomington, Minnesota.

60.     On or about July 5, 2013, SUPAPON SONPRASIT received a B1/B2 tourist visa to enter the United States by representing that she intended to travel to Florida for ten days in August 2013 with her daughter and father and to continue travel to the United

28

United States v. Sumalee Intarathong, *et al.*

Kingdom. SUPAPON SONPRASIT falsely stated that she was not coming to the United States to engage in prostitution and that she had not engaged in prostitution within the past ten years. On or about July 11, 2013, the travel itinerary of SUPAPON SONPRASIT was sent between members of the criminal conspiracy. SUPAPON SONPRASIT entered the United States on or about July 22, 2013. On or about August 23, 2013, SUPAPON SONPRASIT traveled from Los Angeles, California to Minneapolis, Minnesota. SUPAPON SONPRASIT was identified by another member of the criminal conspiracy as having engaged in commercial sex acts in Minnesota to benefit the criminal organization.

61. On or about July 16, 2014, CHONTHICHA SOICHAISONG received a B1/B2 tourist visa to enter the United States by representing that she was a teacher who intended to travel to New York with her common law husband. CHONTHICHA SOICHAISONG falsely stated that she was not coming to the United States to engage in prostitution and that she had not engaged in prostitution within the past ten years. CHONTHICHA SOICHAISONG entered the United States on or about August 7, 2014. On or about August 16, 2014, September 1, 2014, and February 23, 2015, escort-style photos of CHONTHICHA SOICHAISONG were emailed between members of the criminal conspiracy. On or about October 5, 2014, the sex trafficking organization posted an ad on backpage.com that advertised an Asian female for commercial sex activities in Minneapolis, Minnesota. Law enforcement interviewed a commercial sex buyer who responded to the advertisement. The commercial sex buyer identified CHONTHICHA SOICHAISONG as the woman with whom he engaged in a commercial sex transaction in exchange for U.S. currency.

United States v. Sumalee Intarathong, *et al.*

62.    All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS

63.    The allegations contained in paragraphs 1 through 62 of this Indictment are re-alleged as if stated in full herein and are incorporated by reference for the purpose of forfeiture allegations.

64.    As the result of the offenses alleged in Counts 1 through 3 of this Indictment, the defendants,

**SUMALEE INTARATHONG,**
a/k/a Joy,
a/k/a Alice Spencer Warren,
a/k/a Alisa Spencer Warren,
a/k/a Emily Spencer Warren,
a/k/a Emily Alice Spencer Warren,
a/k/a Alisa Spencer,
a/k/a Sumalee Noibumrung,
a/k/a P'Dew,
a/k/a Ms. Tew,
a/k/a P'M,
a/k/a M,
**CHABAPRAI BOONLUEA,**
a/k/a Lily,
a/k/a Ploy,
a/k/a Linda,
**NOPPAWAN LERSLURCHACHAI,**
a/k/a Gangsmoo,
**WATCHARIN LUAMSEEJUN,**
a/k/a Paris,
a/k/a Moo,
**PANTILLA RODPHOLKA,**
a/k/a Sukanda Kittikunadul,
a/k/a Noon,
**KHANONG INTHARATHONG,**
a/k/a Nancy,
**SOYSUDA SIANGDANG,**
**ANDREW FLANIGAN,**
**TODD VASSEY,**

**THI VU,**
**JOHN ZBARACKI,** and
**JOHN NG,**

shall forfeit the following property to the United States pursuant to Title 18, United States

Code, Section 1594:

(1) any property, real or personal, involved in, used, or intended to be used to

commit or to facilitate the commission of the offenses, and any property traceable to such

property; and

(2) any property, real or personal, constituting or derived from, any proceeds

obtained, directly or indirectly, as a result of the offenses, and any property traceable to

such property

65.     As the result of the offenses alleged in Counts 4 and 5 of this Indictment, the

defendants,

**SUMALEE INTARATHONG,**
**a/k/a Joy,**
**a/k/a Alice Spencer Warren,**
**a/k/a Alisa Spencer Warren,**
**a/k/a Emily Spencer Warren,**
**a/k/a Emily Alice Spencer Warren,**
**a/k/a Alisa Spencer,**
**a/k/a Sumalee Noibumrung,**
**a/k/a P'Dew,**
**a/k/a Ms. Tew,**
**a/k/a P'M,**
**a/k/a M,**
**CHABAPRAI BOONLUEA,**
**a/k/a Lily,**
**a/k/a Ploy,**
**a/k/a Linda,**
**NOPPAWAN LERSLURCHACHAI,**
**a/k/a Gangsmoo,**
**WATCHARIN LUAMSEEJUN,**

31

**a/k/a Paris,**
**a/k/a Moo,**
**PANTILLA RODPHOLKA,**
**a/k/a Sukanda Kittikunadul,**
**a/k/a Noon,**
**KHANONG INTHARATHONG,**
**a/k/a Nancy,**
**SOYSUDA SIANGDANG,**
**ANDREW FLANIGAN,**
**TODD VASSEY,**
**THI VU,**
**JOHN ZBARACKI, and**
**JOHN NG,**

shall forfeit the following property to the United States pursuant to Title 18, United States Code, Section 2428:

(1) any property, real or personal, used or intended to be used to commit or to facilitate the commission of the offenses; and

(2) any property, real or personal, constituting or derived from, any proceeds obtained, directly or indirectly, as a result of the offenses.

66. As the result of the offense alleged in Count 6 of this Indictment, the defendants,

**SUMALEE INTARATHONG,**
**a/k/a Joy,**
**a/k/a Alice Spencer Warren,**
**a/k/a Alisa Spencer Warren,**
**a/k/a Emily Spencer Warren,**
**a/k/a Emily Alice Spencer Warren,**
**a/k/a Alisa Spencer,**
**a/k/a Sumalee Noibumrung,**
**a/k/a P'Dew,**
**a/k/a Ms. Tew,**
**a/k/a P'M,**
**a/k/a M,**
**CHABAPRAI BOONLUEA,**

a/k/a Lily,
a/k/a Ploy,
a/k/a Linda,
**NOPPAWAN LERSLURCHACHAI,**
a/k/a Gangsmoo,
**WATCHARIN LUAMSEEJUN,**
a/k/a Paris,
a/k/a Moo,
**PANTILLA RODPHOLKA,**
a/k/a Sukanda Kittikunadul,
a/k/a Noon,
**KHANONG INTHARATHONG,**
a/k/a Nancy,
**SOYSUDA SIANGDANG,**
**ANDREW FLANIGAN,**
**TODD VASSEY,**
**THI VU,**
**JOHN ZBARACKI,** and
**JOHN NG,**

shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property.

67.    As the result of the offense alleged in Count 7 of this Indictment, the defendants,

**SUMALEE INTARATHONG,**
a/k/a Joy,
a/k/a Alice Spencer Warren,
a/k/a Alisa Spencer Warren,
a/k/a Emily Spencer Warren,
a/k/a Emily Alice Spencer Warren,
a/k/a Alisa Spencer,
a/k/a Sumalee Noibumrung,
a/k/a P'Dew,
a/k/a Ms. Tew,
a/k/a P'M,
a/k/a M,
**CHABAPRAI BOONLUEA,**

33

**a/k/a Lily,**
**a/k/a Ploy,**
**a/k/a Linda,**
**NOPPAWAN LERSLURCHACHAI,**
**a/k/a Gangsmoo,**
**WATCHARIN LUAMSEEJUN,**
**a/k/a Paris,**
**a/k/a Moo,**
**PANTILLA RODPHOLKA,**
**a/k/a Sukanda Kittikunadul,**
**a/k/a Noon,**
**KHANONG INTHARATHONG,**
**a/k/a Nancy,**
**SOYSUDA SIANGDANG,**
**ANDREW FLANIGAN,**
**TODD VASSEY,**
**THI VU,**
**JOHN ZBARACKI, and**
**JOHN NG,**

shall forfeit to the United States pursuant to Title 18, United States Code, Section

981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or

personal, which constitutes or is derived from proceeds traceable to the violations of Title

18, United States Code, Section 1952.

68.     As the result of the offense alleged in Count 8, the defendants,

**SUMALEE INTARATHONG,**
**a/k/a Joy,**
**a/k/a Alice Spencer Warren,**
**a/k/a Alisa Spencer Warren,**
**a/k/a Emily Spencer Warren,**
**a/k/a Emily Alice Spencer Warren,**
**a/k/a Alisa Spencer,**
**a/k/a Sumalee Noibumrung,**
**a/k/a P'Dew,**
**a/k/a Ms. Tew,**
**a/k/a P'M,**
**a/k/a M,**
**PATCHARAPORN SAENGKHAM,**

34

United States v. Sumalee Intarathong, *et al.*

**a/k/a Julie,**
**a/k/a Fah,**
**CHANANCHIDA SENASU,**
**a/k/a Princess,**
**a/k/a Sasha,**
**YADAPORN PANNGOEN,**
**a/k/a Ying,**
**a/k/a Pam,**
**SUPAPON SONPRASIT,**
**a/k/a Ivy,**
**a/k/a Supapon Maki, and**
**CHONTHICHA SOICHAISONG,**
**a/k/a Anna,**

shall forfeit to the United States pursuant to Title 18, United States Code, Section 982, all conveyances, including vessels, vehicles, and aircraft, used in the commission of the violation, all property, real and personal, that constitutes or is derived from or is traceable to proceeds obtained directly or indirectly from the commission of the offense, and all property, real or personal, that was used to facilitate, or was intended to be used to facilitate the commission of the offense.

69.     If any of the above-described property is unavailable for forfeiture within the definition of Title 21, United States Code, Section 853(p), the United States intends to forfeit substitute property pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON

_____
UNITED STATES ATTORNEY